UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

**FELIX MANYWEATHER, ET AL.**     **CASE NO. 3:21-CV-1317**

**VERSUS**     **JUDGE TERRY A. DOUGHTY.**

**WOODLAWN MANOR AND**     **MAG. JUDGE KAYLA D. MCCLUSKY**
**LOUISIANA NURSING HOME**
**ASSOCIATION LIABILITY TRUST**

### REPORT AND RECOMMENDATION

Before the undersigned is a motion to dismiss for failure to state a claim and for improper venue filed by Defendants, Woodlawn Manor, Inc., doing business as The Oaks ("The Oaks") and Louisiana Nursing Home Association Liability Trust ("LNHAT"), together referred to as Defendants. [doc. #7-1]. Plaintiffs, Felix Manyweather, Kimmieko Manyweather, Alison Tucker, Emanami Kirk, Timothy Manyweather, individually and on behalf of the unopened Succession of Barbara Jean McGraw ("Plaintiffs") oppose this motion. [doc. #15].

For the reasons assigned below, it is **RECOMMENDED** that the Court **GRANT** the motion **IN PART, DISMISS** Plaintiffs' claims for relief under the Americans with Disabilities Act and Medicare and Medicaid regulations, and **REMAND** Plaintiffs' remaining claims to the 4th Judicial District Court of Ouachita Parish, Louisiana.

### I. BACKGROUND

On March 11, 2020, the World Health Organization declared Covid-19, a virus causing flu-like symptoms and often more severe complications such as blood clots, strokes, and death, a global pandemic. [doc. #1-2]. During this time, Plaintiffs' mother, Barbara Jean McGraw, (the

"Decedent") was a resident at The Oaks, a nursing facility in Monroe, Louisiana. *Id.* Plaintiffs claim that, during this time, the Decedent contracted Covid-19 due to The Oaks's failure to implement recommended guidelines and regulations relating to Covid-19. *Id.* Specifically, Plaintiffs claim that The Oaks failed to restrict all non-essential visitors from the facility, screen residents, staff, and visitors for Covid-19 symptoms, and provide PPE to staff and residents. *Id.* Plaintiffs also allege that The Oaks failed to cancel group activities, restrict residents to their rooms, and enforce social distancing. *Id.* According to Plaintiffs, Defendants' failure to comply with these regulations violated state and federal law, as well as public health guidelines. *Id.*

After Plaintiffs filed this suit in state court, Defendants filed a notice of removal, claiming that Plaintiffs assert claims "arising under" federal law within the meaning of 28 U.S.C. § 1331. [doc. #1]. Specifically, Defendants allege that Plaintiffs have made claims under the Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101, *et seq.*; federal Medicare and Medicaid laws and regulations ("CMS[1] regulations"); and the Public Readiness and Emergency Preparedness Act ("PREP Act"), 41 U.S.C. § 247d-6d, 247d-6e. *Id.* Although Defendants concede that Plaintiffs allege state law claims for "gross negligence," Defendants claim the PREP Act expressly preempts all state law claims that Plaintiffs have asserted. [doc. #1].

The PREP Act, passed in 2005, is a federal statute which provides the Secretary of Health and Human Services (the "Secretary") the authority to issue declarations determining that "a disease or other health condition or other threat to health constitutes a public health emergency." 41 U.S.C. § 247d-6d(b). Once a declaration has been issued, the PREP Act applies broad

---

[1] CMS is an abbreviation for the Centers for Medicare and Medicaid Services.

immunity to covered persons for liability arising from the use or administration of a covered countermeasure relating to the subject of the declaration. 41 U.S.C. § 247d-6d(a)(1). In March 2020, the Secretary issued a declaration relating to Covid-19. 85 Fed. Reg. 15198 (Mar. 17, 2020). Accordingly, the PREP Act immunizes conduct which leads to Covid-19 related death or injuries, provided the defendant constitutes a "covered person" and the covered person's alleged conduct constitutes "covered countermeasures."

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure allow dismissal of a claim for "failure to state a claim upon which relief can be granted." FED.R.CIV.P. 12(b)(6). To state a claim, the pleading must contain a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED.R.CIV.P. 8(a)(2). While the pleading need not assert detailed factual allegations, it must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is plausible on its face "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 663 (2009).

In deciding a motion to dismiss, the Court must accept as true all of the plaintiff's allegations, unless the allegation is a "threadbare recital[] of a cause of action's elements, supported by mere conclusory statements." *Id.* Although legal conclusions may be asserted, "they must be supported by factual allegations" to gain the assumption of truth. *Id.* at 664. A well-pleaded complaint may proceed even if it strikes the Court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*, 550 U.S. at 556. Nevertheless, the Court may dismiss a complaint "if it clearly lacks merit – for example, where there is an absence

of law to support a claim of the sort made." *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020) (citations and internal quotation omitted).

### III. DISCUSSION

Plaintiffs assert multiple claims against Defendants for their alleged failure to properly protect Plaintiffs from exposure to Covid-19. [doc. #1-2]. Plaintiffs expressly bring state law claims for negligence and/or gross negligence and allude to claims arising under the ADA and CMS. *Id.* In their motion to dismiss, Defendants list a host of reasons that Plaintiffs' claims should be dismissed. [doc. #7-1]. Among others, Defendants contend, *inter alia*, that Plaintiffs' claims are barred by the PREP Act and two Louisiana state statutes, all of which Defendants claim provide immunity for the decisions they made relating to Covid-19. *Id.* Defendants also assert that Plaintiffs' ADA claims under Title III must be dismissed because they seek damages when Title III provides for only injunctive relief and, alternatively, because of Plaintiffs' failure to exhaust administrative remedies prior to seeking judicial relief. *Id.* Defendants also move for dismissal of Plaintiffs' claim under the CMS regulations because there is no private cause of action in favor of third parties. *Id.*

    A.    *Plaintiffs' Claims Under the ADA*

Defendants argue that Plaintiffs' ADA claims must be dismissed because Plaintiffs failed to exhaust administrative remedies before filing suit. *Id.* They further contend that Title III of the ADA provides only for injunctive relief, not the damages Plaintiffs seek. *Id.* In their reply memorandum, Plaintiffs failed to oppose Defendants' ADA arguments. [doc. # 15].

Plaintiffs' Petition includes language mirroring that of Title III, indicating that they intended to assert this type of ADA claim. [doc. #1-2]. Title III of the ADA provides that "[n]o

4

individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

> To state a prima facie claim under Title III of the ADA, a plaintiff must show: (1) that she is "disabled" as defined by the ADA; (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) that the defendant discriminated against the plaintiff because of the plaintiff's disability. 42 U.S.C. § 12182(a).

*Kramer v. Lakehills S., LP,* No. A-13-CA-591, 2014 WL 51153, at *6 (W.D. Tex. Jan. 7, 2014). While it is undisputed that employment-related disability claims under Title I of the ADA require administrative exhaustion prior to filing suit, it is not settled whether Title III of the ADA requires exhaustion. *Wyatt v. Liljenquist.* 96 F.Supp.2d 1062, 1064 (C.D. Cal. 2000).

Courts' disagreement on whether plaintiffs with Title III must exhaust administrative remedies before seeking judicial relief stems from 42 U.S.C. § 12188, which states that the remedies and procedures of Title VII of the Civil Rights Act, specifically 42 U.S.C. § 2000a-3(a), also apply to claims under Title III of the ADA. 42 U.S.C. § 12188. Section 2000a-3(a) itself is limited to providing claimants with the right to seek injunctive relief. 42 U.S.C. § 2000a-3(a). However, 42 U.S.C. § 2000a-3**(c)** requires claimants to give notice to the appropriate state or local authority before seeking judicial relief. 42 U.S.C. § 2000a-3(c). Essentially, courts disagree on whether 42 U.S.C. § 12188 incorporates only Section 2000a-3(a), or Section 2000a-3(c) as well. Under one line of cases, courts have found that, because Section 2000a-3(a) is limited by the notice requirement in Section 2000a-3(c), both sections apply to claimants seeking relief under Title III of the ADA and thus, claimants bringing Title III claims must comply with the notice requirement. *Howard v. Cherry Hills Cutters, Inc.*, 935 F.Supp.

5

1148, 1149-50 (D. Colo. 1997); *Daigle v. Friendly Ice Cream Corp.*, 957 F.Supp. 8, 10 (D. N.H 1997). Under a second line of cases, other courts have found that because the ADA incorporates only Section 2000a-3(a), not Section 2000a-3(c), administrative exhaustion is not required for Title III claims. *See, e.g.*, *Soignier v. Am. Bd. of Plastic Surgery*, No. 95 C 2736, 1996 WL 6553, at *1 (N.D. Ill. Jan. 8, 1996), *aff'd* 92 F.3d 547 (7th Cir. 1997), *cert. denied*, 519 U.S. 1093 (1997); *McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135, 139 (2d Cir. 2007).

Although it does not appear that the Fifth Circuit has decided the issue, the district courts in the Fifth Circuit that have addressed this issue have followed the second line of cases. *See Kirk v. Rental Assoc., P.A.*, No. 07-CA-009, 2007 WL 2048833, at *5 (W.D. Tex. July 16, 2007) ("Title III of the ADA does not require exhaustion of state or federal administrative remedies."); *Meriweather v. ABC Training/Safety Council Tex. Gulf Coast Chapter*, No. 15-cv-862, 2016 WL 8711726, at *3 (N.D. Tex. Oct. 24, 2016) ("Unlike Title I, neither Title II nor Title III of the ADA requires that a plaintiff file an administrative complaint with the EEOC or otherwise exhaust state or federal administrative remedies before filing a lawsuit."). Although the analyses in *Kirk* and *Meriweather* are not robust, both cases rely on an in-depth statutory analysis conducted in *Wyatt v. Liljenquist*. 96 F.Supp.2d at 1062. In that case, a California district court looked to the plain meaning of 42 U.S.C. § 12188 and determined that "[b]y its express terms, the ADA adopts only Section 2000a-3(a), which says nothing about notice or exhaustion remedies. Furthermore, Section 2000a-3(a) makes no reference to subsection (c)" and therefore, "[t]he unambiguous language of Section 12188(a)(1) defeats" the argument that the ADA incorporates a notice requirement. *Id.* at 1064. The undersigned agrees and does not recommend dismissal on Plaintiffs' Title III ADA claims on the basis of lack of notice.

Defendants further argue, however, that they are entitled to dismissal of Plaintiffs' Title III claims for damages because that Title provides for injunctive relief, not damages. [doc. #7-1]. The undersigned agrees. *See* 42 U.S.C. § 12188 ("The remedies and procedures set forth in section 2000a–3(a) of [Title 42 U.S.C.] are the remedies and procedures [Title III] provides to any person who is being subjected to discrimination . . ."); *see also Plumley v. Landmark Chevrolet, Inc.,* 122 F.3d 308, 312 (5th Cir. 1997) ("Damages are not available for a Title III ADA claim brought by a private party, but a private party may seek injunctive relief."). To the extent that Plaintiffs seek damages under Title III of the ADA, it is recommended that Defendants' motion to dismiss be granted and these claims be dismissed with prejudice.[2]

    B.    *Plaintiffs' Claims Under CMS Regulations*

Defendants move for dismissal of Plaintiffs' claims under CMS regulations on the basis that the laws and regulations governing Medicare and Medicaid reimbursements do not provide a cause of action for third parties. [doc. #7-1]. Plaintiffs also failed to oppose Defendants' arguments on these claims in their reply memorandum. [doc. #15].

While Plaintiffs cite several times in their Petition to Defendants' violations of CMS guidelines or protocols relating to Covid-19, [doc. #1-2], it is unclear whether they are attempting to assert a cause of action under the CMS regulations or merely using the alleged violations as evidence of Defendants' gross negligence. Unlike their references to the ADA, Plaintiffs do not cite language from CMS guidelines or make clear which protocols Defendants allegedly failed to implement. Rather, Plaintiffs' references to CMS violations are vague and generally circle back to Plaintiffs' claims for negligence. For example, Plaintiffs state that

---

[2] As Plaintiffs did not seek injunctive relief, their ADA claim will be dismissed in its entirety if the district court adopts this Report and Recommendation.

Defendants failed to comply with guidelines from the CMS and "[a]s a result, [sic] of defendant's negligence and/or gross negligence as set forth herein and hereinabove, the Defendant's facility became rampant with the coronavirus which spread to the staff and residents." [doc. #1-2, p. 12]. A fair reading of the Complaint suggests that Plaintiffs do not allege a cause of action based on violations of CMS regulations, but, rather, use those alleged violations as evidence of Defendants' negligence.

Out of an abundance of caution, however, the undersigned recommends that the Court dismiss Plaintiffs' claims, if any, under the CMS regulations. As Defendants properly point out, there is no private right of action for violations of CMS regulations. *See, e.g.*, *Steward v. Abbott*, 189 F.Supp.3d 620, 639, n. 14 (W.D. Tex. 2016) (collecting cases); *see also Drain v. Drs. Hospice of Ga., Inc.*, No. 18-cv-2947, 2018 WL 9868572, at *2 (N.D. Ga. July 6, 2018 ("Congress did not create a remedy for private individuals to enforce the conditions of participation in the regulations at issue—that responsibility falls to CMS."). Accordingly, it is recommended that the Court grant Defendants' motion to dismiss and dismiss with prejudice Plaintiffs' claims, if any, under the CMS regulations.

    C.    *Plaintiffs' Claim for Negligence and/or Gross Negligence*

If Plaintiffs' claims under the ADA and CMS regulations are dismissed, only Plaintiffs' state law claims of negligence and gross negligence will remain. Defendants posit that these claims are expressly preempted by federal law and, thus, confer onto this Court subject matter jurisdiction under 28 U.S.C. § 1331. [doc. #1].

Express or complete preemption exists when "the pre-emptive force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a

federal claim for purposes of the well-pleaded complaint rule.'" *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). As a result, state law claims which are completely preempted effectively become federal claims and thus, allow federal courts to exercise subject matter jurisdiction. A finding of complete preemption requires a defendant claiming preemption to show that

> (1) the statute contains a civil enforcement provision that creates a cause of action that both replaces and protects the analogous area of state law; (2) there is a specific jurisdictional grant to the federal courts for enforcement of the right; and (3) there is clear Congressional intent that claims brought under the federal law be removable.

*Johnson v. Baylor Univ.*, 214 F.3d 630, 632 (5th Cir. 2000). This is a stringent standard which few federal statutes have been able to meet.[3] *Aaron v. Nat'l Union Fire Ins. Co. of Pittsburg, Pa.*, 876 F.2d 1157, 1161 (5th Cir. 1989).

Defendants insist that Plaintiffs' state law negligence claims are preempted by the PREP Act; however, the majority of courts to decide the issue have found exactly the opposite. *See Dupervil v. All. Health Operations, LLC*, 516 F.Supp.3d 238, 255 (E.D. N.Y. 2021). Most notably, the Third Circuit, the first appeals court to decide the issue, recently found that the PREP Act does not completely preempt state law negligence claims. *Est. of Maglioli v. Alliance HC Holdings, LLC*, No. 20-2833 (3d Cir. Oct. 20, 2021). Additionally, "[n]early every district court to consider this issue," including several within the Fifth Circuit, "has concluded the PREP Act is not a complete preemption statute." *Est. of Cowan v. LP Columbia KY, LLC*, No. 20-00118, 2021 WL 1225965 (W.D. KY Mar. 31, 2021); *see also Schuster v. Percheron*

---

[3] In fact, the Supreme Court has recognized only three statutes which completely preempt state law: The Labor Management Relations Act, ERISA, and the National Bank Act. Additionally, "[t]he Fifth Circuit has found that the Carmack Amendment and Interstate Commerce Commission Termination Act completely preempt certain claims related to interstate shipping." *Russell v. Irving Place Assocs.*, No. 20-cv-805 (W.D. La. Aug. 5, 2021).

*Healthcare, Inc.*, 493 F.Supp.3d 533 (N.D. Tex. 2021); *Brannon v. J. Ori, LLC*, No. 21-cv-00058, 2021 WL 2339196 (E.D. Tex. 2021); *Russell v. Irving Place Assocs.*, Docket No. 5:20-cv-805 (W.D. La., Monroe Division, Aug. 5, 2021); *Jones*, 2021 WL 3416993. Specifically, courts have found that the PREP Act fails the stringent test the Fifth Circuit requires the statute to meet to be considered a complete preemption statute. The undersigned agrees.

First, to qualify as a complete preemption statute, the PREP Act must contain a civil enforcement provision which both replaces and protects the analogous area of law. *Johnson*, 214 F.3d at 632. Many courts have decided, and this Court agrees, that it does not. "[T]he PREP Act is, at its core, an immunity statute; it does not create rights, duties, or obligations." *Dupervil*, 516 F.Supp.3d at 251. Rather, when the PREP Act applies, it provides tortfeasors immunity for injuries "caused by, arising out of, relating to, or resulting from the administration of a covered countermeasure . . ." 42 U.S.C. § 247d-6d(a). Instead of filing suit against the tortfeasor, injured persons are limited to seeking recovery from the "Covered Countermeasure Process Fund," a compensation fund administered by the Secretary. *Id.* A claimant may file suit in the United States District Court for the District of Columbia; however, "only when the case involves death or serious physical injury proximately caused by willful misconduct of a covered person, and then only after the claimant has exhausted administrative avenues and declined to accept compensation from the" compensation fund. *Russell*, No. 20-cv-805, at *11. The PREP Act is not analogous to a state law tort suit. Except for claims of willful misconduct, plaintiffs are barred from bringing their suit or recovering in district courts. Moreover, even for the very limited exception regarding willful misconduct claims, plaintiffs must exhaust administrative remedies, and may instead choose recovery under the compensation fund. Thus, the PREP Act fails to meet this requirement for complete preemption.

Second, to be considered a complete preemption statute, the PREP Act must specifically grant jurisdiction to federal courts to enforce a right. *Johnson*, 214 F.3d at 632. However, the PREP Act does not provide that claims resulting from the administration of covered countermeasures must be brought in federal courts. Instead, it confers jurisdiction to the Secretary who has sole discretion of the compensation fund. The only claims which the PREP Act confers jurisdiction onto federal courts to hear are those involving willful misconduct. However, as discussed *supra*, those claims must first be administratively exhausted, and the claimant may instead choose to be compensated from the compensation fund. Moreover, only one federal district court has jurisdiction to hear these claims, and it must be heard in front of a panel of three judges. Therefore, except for an incredibly limited situation, suits brought pursuant to the PREP Act cannot be brought in federal court. Thus, the PREP Act does not meet the second requirement for complete preemption.

Finally, to satisfy complete preemption, there must be evidence that Congress clearly intended claims brought under the PREP Act to be removable. *Johnson*, 214 F.3d at 632. To show this intent, Defendant seem to point to the Secretary's Fourth Amendment to his Declaration which stated that his Declarations "'must' be construed in accordance with subsequent Advisory Opinions," which renders them "as no longer 'advisory,' but as having the same authority as the Declaration itself which, in turn, is granted the force of law." [doc. #7-1]. On January 8, 2021, the Secretary issued an advisory opinion which claimed that the PREP Act "is a 'complete preemption' statute" because it establishes "a federal cause of action, administrative or judicial, as the only viable claim." Advisory Op. 21-01. However, this opinion does not mold the PREP Act into a complete preemption statute. In the advisory opinion itself, the Secretary cautions that "[i]t is not a final agency action or final order. It does not have the

force or effect of law." *Id.* Therefore, "even assuming *arguendo* that Congress intended to delegate authority to the Secretary . . . 'generally to make rules carrying the force of law,' the Office of the General Counsel interpretation relied upon by Defendant here explicitly was not 'promulgated in the exercise of that authority.'" *Jones*, 2021 WL 3416993, at *3. Therefore, this element, like the previous two, fails. Without this required showing of Congressional intent, the PREP Act cannot meet the final requirement for complete preemption.

In support for their claim that the PREP Act completely preempts state claims for negligence relating to nursing homes' failure to prevent the spread of Covid-19, Defendants point to a recent opinion from this Court. [doc. #1]. In *Rachal v. Natchitoches Nursing & Rehabilitation Ctr., LLC*, the Court found that the PREP Act expressly preempts state law by comparing it to the Air Transportation Safety and System Stabilization Act (the "ATSSSA"), a recovery statute passed after the September 11, 2001 terrorist attacks which the Second Circuit held expressly preempted state law claims. Docket No. 1:21-cv-00334 (W.D. La., Alexandria Division, Apr. 30, 2021). The purpose of the ATSSSA was to provide relief to the victims of the attacks, and in order to do so, created a Victim's Compensation Fund under which those injured by the attacks could recover. 49 U.S.C. § 40101; *In re WTC Disaster Site*, 414 F.3d 352, 357 (2d Cir. 2005). In *Rachal*, this Court found that the PREP Act, which also established relief through a compensation fund, was analogous to the ATSSSA and therefore, is also a complete preemptive statute. No. 1:21-cv-00334, at *n. 3.

However, there is a crucial distinction between the ATSSSA and the PREP Act, namely that in addition to a compensation fund, the ATSSSA created an exclusive federal cause of action for claims arising out of the terrorist attacks. *See* Air Transportation Safety and System Stabilization Act of 2001, Pub. L. No. 107-42, § 408, 115 Stat. 230. 240-41 ("There shall exist a

federal cause of action for damages arising out of the hijacking and subsequent crashes of American Airlines flights 11 and 77, and United Airlines flights 93 and 175, on September 11, 2001 . . . . [T]his cause of action shall be the exclusive remedy for damages arising out of the hijacking and subsequent crashes of such flights."). In determining that the ATSSSA preempted state claims arising out of the terrorist attacks, the Second Circuit concluded that "it was [the] exclusive federal remedy . . . that gave the statute its extraordinary preemptive force, such that any claim within its scope was really a federal-law claim." *Lopez v. Advanced HCS, LLC*, No. 21-cv-00470, 2021 WL 1259302, at *4 (N.D. Tex., Apr. 5, 2021). The PREP Act, on the other hand, creates no such federal cause of action other than those actions for willful misconduct, "and even those claims require administrative exhaustion before they may be filed in federal court." *Bolton v. Gallatin Ctr. for Rehabilitation & Healing, LLC*, No. 20-cv-00683, 2021 WL 1561306, at *7 (M.D. Tenn. Apr. 21, 2021). The majority of the courts that have decided the issue have found that this distinction is pivotal to the comparison between the PREP Act and the ATSSSA and precludes the statutes from being considered analogous. *See Id.*; *Russell*, No. 1:20-cv-805, at *15; *Jones*, 2021 WL 3416993, at *5; *Schuster*, 493 F.Supp.3d at 539; *Bolton*, 2021 WL 1561306, at *7. The undersigned agrees and recommends that the Court join the majority of other courts that have found that this difference requires the conclusion that the PREP Act is not completely preempted by federal law.

  D.  *Supplemental Jurisdiction*

  Having found that Plaintiffs' state law claims are not expressly preempted by federal law, the Court's only basis for subject matter jurisdiction over the claims remaining in this lawsuit is under supplemental jurisdiction, 28 U.S.C. § 1367(c). Section 1367(c) provides federal district courts the discretion to exercise or decline supplemental jurisdiction after dismissing all claims

over which the court has original jurisdiction. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). The Fifth Circuit has said that when all federal claims in a case have been disposed of before trial, the district court should use its discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. *Brim v ExxonMobil Pipeline Co.*, 213 Fed.App'x 303, 305 (5th Cir. 2007). The Court explained that this is because in "case[s] in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point toward declining to exercise jurisdiction over the remaining state-law claims." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 586-87 (5th Cir. 1992) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, n. 7 (1988)) (quotations omitted).

Here, weighing these factors clearly indicates that the Court should decline to exercise supplemental jurisdiction. First, judicial economy would be best served by declining to exercise jurisdiction because this case is still in the very early stages of litigation. Defendants removed on May 18, 2021 – less than five months from the date of this report and recommendation. [doc. #1]. No discovery has been performed, nor have any motions, other than the instant motion to dismiss, been adjudicated. Second, it is convenient to remand this suit because the parties will not have to perform a significant amount of redundant or burdensome work after the case is transferred back to state court. Even if Defendants are required to file in state court an additional motion to dismiss or the equivalent of one, Defendants' position on why the Court should dismiss Plaintiffs' negligence claims will likely remain the same. Therefore, while filing the same argument in a different court may present some inconvenience to Defendants, any inconvenience will be negligible at best. Third, federalism and comity weigh in favor of declining jurisdiction. The issues remaining in this case involve questions of substantive

Louisiana law, and, although negligence by itself is not particularly novel or complex, nursing homes' negligence as it relates to failed implementation of Covid-19 protocols is relatively new. Accordingly, this issue, which based in state law negligence, should be decided by Louisiana state courts. Finally, remanding this case is not unfair to either party. The parties will not be required to repeat the discovery process, and as the Court already mentioned, any state court motion to dismiss that Defendants may file will likely be on the same basis as this motion. Therefore, this factor weighs in favor of declining to exercise supplemental jurisdiction.

Accordingly, for the reasons set forth above, **IT IS RECOMMENDED** that Defendants' motion to dismiss be **GRANTED IN PART and DENIED IN PART,**[4] Plaintiffs' ADA and CMS claims be **DISMISSED**, and Plaintiffs' remaining state law claims for negligence and/or gross negligence be **REMANDED** to the 4th Judicial District Court of Ouachita Parish, Louisiana.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

---

[4] The undersigned does not reach Defendants' remaining arguments in their motion to dismiss, and they will be free to raise those arguments to the state court (or to re-urge them in this form if the district judge declines to adopt the recommendation of remand).

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE in Chambers on this 22nd day of October 2021.

_____
KAYLA DYE MCCLUSKY
UNITED STATES MAGISTRATE JUDGE